POPE & HICKMAN v. J. NANCE & CO. use of LUCAS.

1. A creditor of a firm, receiving from one of the partners, after the firm dissolved, the paper of third persons in payment of his partnership demand, and in exchange for the paper of the firm, thereby releases the other partners. But if the paper received in exchange be forged, then the transaction is void, and the original liability of all the partners still exists.

2. A note of third persons having several signatures, is received in payment of a debt, on the faith principally of one signature, which proves to be forged; An action can be maintained on the original consideration without previously returning the note, if it can be shewn that the other parties are insolvent, and that no injury can be sustained by the party passing it on account of the failure to return.

3. In an action by the party receiving the paper against the firm originally indebted, the person whose name is forged, is a competent witness to prove the forgery.

4. The record, verdict and judgement for defendant on the plea of *non est factum*, in an action by the party who received the paper, against the party whose name is alleged to be forged, is admissible evidence for plaintiff, to establish the forgery in a suit by the party who received the forged paper against the partnership on the original consideration; the partner who passed it being apprised of the pendency of the suit and nature of the issue, and being consulted as to its management.

THIS was a writ of error sued out by Pope and Hickman to reverse a judgement rendered in the Circuit Court of Madison county, in the same cause originally commenced by Nance & Co. against Pope and Hickman, and which was twice before tried in said Court, and has also been twice previously, on different points, submitted to the consideration of this Court. [a] After the cause was by this Court remanded the second time, the defendants below withdrew the special plea which they had previously pleaded, and went to trial on the general issue. The declaration was the same as at the last trial, and consisted of two special counts in assumpsit, setting forth a variety of circumstances, and three common counts. [b] At the October term, 1827, there was a verdict found and judgement rendered thereon for the plaintiffs, Nance & Co. for ten thousand one hundred and twenty-four dollars, sixty-four cents.

At the trial, Pope and Hickman took a bill of exceptions, setting out all the evidence given at the trial, and

*a Minor's Ala. R. 299. Ante 220.*

*b Those proceedings and pleadings are particularly reported in this book, page 220, and in Minor's Ala. R. 299.*

JANUARY 1829.

Pope & Hickman
v.
Nance & Co.

the charge of the Court thereupon; also shewing the charges that were requested by the defendants. The bill is too voluminous to be here recited; but the facts established by the evidence, and which are deemed by the Court the most material to give the general features of the cause are as follows: Pope and Hickman purchased from William Davis, the agent of Nance & Co. sundry slaves, and in part payment, made their note for $6662, dated the 6th of February, 1819, payable nine months after date, to John Brahan, and by him endorsed in blank. The note was delivered to the said agent, who endorsed it to Nance & Co. The partnership between Pope and Hickman was dissolved in April, 1819; the partnership effects were transferred to Pope, and by the terms of the dissolution, Pope was to pay all the debts of the firm, and he gave to Hickman a bond with three sureties to indemnify him against the payment of debts due from the firm. At the time of the dissolution, the firm was considered wealthy. In December, 1819, John R. Lucas, one of the firm of Nance & Co. applied to Pope for the payment of the note; Pope alleged he had not the money, and several propositions were made by the parties for a settlement of it in some other way. Finally, Pope offered to procure the note of S. D. Hutchings & Co. and Simon Turner, endorsed by Egbert Harris, which Lucas agreed to receive. Shortly afterwards, a note purporting to be signed and endorsed as agreed upon, was produced and delivered to Lucas in payment of the one due by the firm of Pope and Hickman, which last was delivered up to Pope, and the names of the makers of it were erased by drawing a pen across the signatures. Pope refused to endorse the substituted note, and said that Lucas must rely on the solvency of the names on it. He represented Hutchings & Co. as respectable and responsible merchants, and Turner and Harris as wealthy and respectable planters, and referred Lucas to several persons for information as to their standing. Lucas made those inquiries, and afterwards told Pope that he relied principally on the solvency of Turner, from what information he had received, and because he knew something himself of Turner's standing. That the note was passed as genuine, nothing being said to the contrary, and that Lucas had agreed to risk the solvency of the parties to the note, but had agreed to risk nothing else. It was expressly

stipulated, that the substituted note should be received as a payment.

About the maturity of the substituted note, several months after its date, it was reported to the agent of Lucas, that Turner, one of the makers, denied his signature. The said agent had it protested at the time of payment, and commenced suit against all the makers and the endorser. Before he did so, he mentioned to Pope his intention of employing Mr. M'Kinley as the attorney to prosecute and manage the suit, and Pope expressed his willingness that he should be so employed. M'Kinley had been previously retained by Pope to attend to his business generally. Pope was afterwards in the office of M'Kinley, at the time he was actually employed by the said agent, and did not object to his managing the business, observing " that if he should ever be sued by Lucas it would be on the ground of his failing to recover on said note; and said also that he did not consider himself bound to Lucas in any event, but if a suit should ultimately be commenced againt him, he should consider M'Kinley bound to him as counsel;" and on that understanding, it was concluded that he might manage the cause. Turner, under our statute, pleaded that he did not execute the note; the issue on which was found by the jury in his favor, and judgement for him was rendered on it. Hutchings died pending the suit against him, and it abated as to him, but judgement was rendered against Bradford, his surviving partner. A *fi. fa.* was issued on the judgement against him, and was returned no property found, and afterwards he took the benefit of the insolvent act. Two writs successively were issued against Harris, the endorser, which were returned " not found." No further steps were taken against him, nor against the estate of Hutchings, because it was conceived by the attorney that they were insolvent. Pope was consulted as to the persons to be subpœnaed to prove Turner's signature. At the time M'Kinley was employed, Turner's signature to the note was compared with his genuine signature, and it was the opinion of all present that it was in his hand writing. In a short time after the determination of the suit against Turner and Hutchings & Co. the present action was instituted. During this interval, B. Peete, one of Lucas' agents, proposed to Pope, that if he would secure the debt, he would give

him one and two years to pay it; he refused on the ground that he was insolvent, and would not ask any person to become his security. Lucas knew of the dissolution of the firm of Pope and Hickman; it was announced in a newspaper in Huntsville, over their partnership signature, and authority was given to Pope to close the unsettled business of the firm.

Several witnesses were sworn in relation to the genuineness of Turner's signature; the evidence given by them was contradictory as to it. Turner himself was introduced and swore it was forged. Evidence was also introduced to prove that the signature of Harris was not in his hand writing; one witness however, said his right hand had been injured by an accident, and no further evidence was given on the subject. It was also proved that Harris and Turner were wealthy when the note was given, but that Harris had since become insolvent. The administrator of Hutchings swore that his estate was unable to pay its debts, but that there were between four and five thousand dollars belonging to it, that would go to some of the creditors, but he could not tell which. One witness said, that Pope had admitted, during the pendency of the suit against Turner, that if Lucas failed to recover the amount, Pope and Hickman would be bound for it. This was in substance, all the evidence given.

The defendants objected to the introduction of the record of the suit of Lucas against Hutchings & Co. and Turner, as evidence, because the defendants were neither parties nor privies thereto, Pope not having been formally notified of its pendency with a view to his liability; and that if Pope had notice of its pendency, Hickman had not, and he was then no partner of Pope's; that it was not admissible to establish a cause of action against Hickman, who was no party to the agreement, and could not be responsible for its breach, and therefore if not proper testimony against him, it was not admissible in this action, being a joint one against both. They also objected to the competency of Turner, who was sworn as a witness for the plaintiffs to prove his name was forged, because of his interest in this; that under the statute in the suit against him, to have the benefit of his plea denying his signature, he was compelled to swear to the truth of it; that he did not stand indifferent, for if he should now swear that his name was not forged, a court of equity

would set aside the verdict which was rendered in his favor and grant a new trial, by which he would be compelled to pay the amount. But the objections were over-ruled and the evidence was introduced.

The Court below instructed the jury as follows:

1st. That if Hickman was shewn not to be liable, no recovery could here be had, as this was a joint action. But that the payment in a note of a third person after the dissolution, did not necessarily prevent a resort to the original liability; though the partner could not make a new *positive* contract to bind the late firm, yet, and more especially if authorized to close the unsettled business and pay debts, if he transferred in payment a forged note as a genuine one, it did not effect the object which it purported to do, and the old liability remained unsatisfied; that if there was no fraud, and the note was genuine, it was a good payment, but if there was a fraud in the transaction, it was no payment by reason of the fraud; that a wilful concealment or false representation by Pope, as to the solvency, would constitute such fraud, but if he disclaimed any responsibility as to solvency, and referred to others for information, and such information was had and relied on, it could be no fraud.

2nd. That it was a general rule, that a party who had received the forged note of a third person in payment of a precedent debt, was bound as soon as the forgery was discovered, to return or offer to return the note, in order to secure his remedy on the original cause of action; that the precise degree of diligence necessary in such cases, was difficult to delineate, and not well defined by the books. On the one hand, all that commercial diligence required of the holder of a bill of exchange to fix the drawer or endorser, was not necessary, neither would it do to lay down the rule with too much looseness the other way. The object of the law is manifestly to secure the rights and remedies of the person who may have in good faith transferred such a note to another, and therefore, although the above is the general rule, yet it is no more, and exceptions to it do exist. If then the jury are satisfied from the whole evidence, that Pope and Hickman have really sustained no injury from a failure on the part of Lucas to return the substituted note, the plaintiffs can resort to the precedent debt, notwithstanding said note was not returned.

3d. That the record and verdict in the case against Turner, were not conclusive evidence of the forgery of Turner's name, but it was evidence to be weighed with other evidence on the same point.

4th. That as to the endorsement of Harris, if it was proven not to be in his hand writing, it was *prima facie* evidence of its forgery, until the presumption was destroyed by shewing that it was written by some one duly authorized.

The defendants requested the Court to charge the jury on a variety of points, in substance as follows: That to enable the plaintiffs to recover, if the substituted note was given expressly in payment, they must prove an offer to return it in a reasonable time after hearing that Turner's name was forged, or at least before this action was commenced; that the forgery of Turner's name must be proved satisfactorily by other sufficient evidence, independently of his own and the record offered, and that unless the forgery is so established, if he was solvent and yet is so, they cannot recover; that Hickman is not bound by any notice given to Pope after the dissolution of the partnership was known to the plaintiffs, and that if they gave no notice to Hickman that they received said note from Pope, or no notice in reasonable time that said note was duly presented and payment refused, or no notice that they held him responsible until suit brought, that Hickman is not liable, and consequently Pope is not in this action; that if after the dissolution of the partnership was known to Lucas, Pope made the new arrangement without special authority from Hickman, and if he has not recognised it subsequently, this action cannot be maintained against both, though Pope might be liable in a separate action against him; that proof that Harris' signature was not in his hand writing, is not proof that it was without his assent, or that it was forged; and that if the forgery of Harris' name was not proved, and if the claim against him would immediately after the determination of this action, be barred by the statute of limitation, or if the claim against the estate of Hutchings would be barred by the statute in like manner, that the plaintiffs could not recover. Also, that if the claim against Pope and Hickman was postponed to a more distant day than that fixed by the note, whereby Hickman would lose his recourse on his bond of indemnity

against the securities in that bond, and such postpone‑ ment was without the consent of said securities, that they should find for the defendants. All which several instructions the Court refused to give.

The admission of the evidence objected to, the instruc‑ tions given by the Court to the jury, and the refusal to give the instructions prayed for, are assigned here as error.

Hopkins, for the plaintiff in error, contended that the failure of the defendants to offer to return the note re‑ ceived in payment to Pope, within a reasonable time after Turner alleged that it was as to him a forgery, dis‑ charged the plaintiffs from their liability : and that an offer to return the note in this case, ought to have been made before the defendants sued Turner upon it. The defendants have never, down to this time, offered to re‑ turn the note to the plaintiffs or to Pope, and this neglect absolves them from responsibility. The tendency of the omission to make an offer to return, is injurious to the plaintiffs, and is a sufficient ground of their exemption from liability. In cases of this kind, proof of actual damage, produced by such omission, cannot always be commanded; and the law presumes that the injury to which such neglect tends, has been sustained, and will protect those whose interests may have been affected, from lia‑ bility. The law of the contract which the defendants made with Pope, and on which they received the note, required them in the event which they contend has hap‑ pened, to return it to Pope, or offer to do so ; and they have no more right to any benefit from the original cause of action, which was discharged by the transfer of the note, without shewing that they have complied with this requisition, than an endorsee who has failed to pursue the course which, if taken, would have changed the con‑ ditional undertaking of his indorser, into an absolute one, has to recover against his endorser. [a] He contended that the principle on which he relied, had been recognized by this Court, at the December term, 1824, in this cause. The Court then reversed a judgement which the defen‑ dants in error had obtained against the plaintiffs, and re‑ manded the cause, and in the unanimous opinion of the Court then delivered, it was held, that if the note was an entire forgery, the failure of the defendants to offer, as soon as the allegation of forgery was heard, to return

a 10 Wheaton, U. S. Bank v. Bank of Georgia, 344, 350, 351. 1 John. Rep. Mackle v. Hatfield, 459.

the note, released Pope and Hickman from responsibility. That decision of the Court irrevocably settled the rights of the parties in relation to the note transferred. Its correctness cannot be questioned between *these parties*, however proper it may be to inquire into it between others. [a]

But the plaintiffs cannot be put now in as good a situation as they would have been in, had the note been returned to them within a reasonable time. No judgement has been obtained against Harris, the endorser, and the statute of limitations bars now a recovery against him. None was obtained against Hutchings, one of the makers of the note, and the same defence would defeat an action against his administrator, who has *assets* of the value of $5000. In the suit against Turner, a verdict and judgement were rendered for him upon his plea, denying the execution of the note. Of that result, the plaintiffs have cause of complaint, because, on the trial of this suit in the Circuit Court, they proved by four witnesses that Turner's signature to the note was genuine, and one witness only besides Turner, not more respectable than the other four, expressed an opinion that it was a forgery. The evidence of Turner, and the record of the suit against him, were admitted as competent testimony. Turner was rendered a competent witness, and the record evidence which was made by the acts of the defendants after the note ought to have been returned, was admitted, but independently of this testimony, which came into existence after the negligence of the defendants occurred, the weight of evidence was decisive against Turner's denial of his liability.

He contended that the act of the defendants, in receiving from Pope the note in payment, after they knew of the dissolution of the partnership, extinguished the debt of Pope and Hickman; and that it could never afterwards be revived without the express assent of Hickman. The note of one partner made after dissolution of a partnership, upon an agreement, that it should be a payment of a partnership debt, releases the other partner. [b] A transfer by endorsement of a note of a third person, by one partner in similar circumstances, and with a like purpose, discharges his former partner from the debt of the firm; because it is as distinct a contract, and the liability afforded by it, as much confined to the endorser as is that growing out of the execution of a note limited to the maker,

*Margin notes:*

JANUARY 1828.

Pope & Hickman
v
Nance & Co.

[a] 6 Cranch 267-8. 7 Cranch 565-7. 1 John. Cha. Rep 189, 194-5. 6 Wheaton 109, 113, 114. 1 Wheaton 355. 10 Wheat. 431, 442, 444, 446. 4 Henning and Mun. 202, 205. 1 Johns. Cases, 492, 495.

[b] 12 Johns. Rep. 409, 410, 411. 2 Johns. R. 213, 221, 300, 304. 4 Espinasse R. 92. 3 John. R. 456, 457, 528, 530. 4 John. R. 224. 1 Bos. and Pul 632. 17 John. R. 80. 3 John. Cases, 180. Chitty on Bills, 184, 185, 188, 296.

46

Pope & Hickman
v.
Nance & Co.

*d* 9 John.Rep.310,
John. v. Weed
and another.

*b* 17 John. Rep.
340, Smith vs.
Rogers.

and a transfer of a note by delivery only, is a contract of as distinctive character as either of the other two; and if the endorsee or transferree fail to get the money of the makers of the note, he can look only to the contract upon which he received it, and that was with one partner only. A note of a third person passed by delivery, upon an agreement that it should be a payment of a precedent debt, is allowed to have this effect, and is absolutely a payment. *a* A mere verbal promise of one partner, made after dissolution of a partnership, to pay, and accepted by a creditor expressly in payment of a partnership debt, releases the other partner. *b* Why is it, that a partnership debt may be discharged in either of these modes? It is not an act for which such an effect can be claimed in virtue of the contract which created the debt, but the effect of it depends upon the new agreement under which the payment was made. Who are bound by the new agreement? only those who are parties to it. Is not such a payment made agreeably to a new agreement valid, if the agreement produces what was expected from it? The inducement with the creditor to make such an agreement, is the expectation that it will be complied with; and he must rely alone upon the person bound by it for the fulfilment of his expectation. A new agreement of this kind may afford liabilities, the extent of which years may be consumed in ascertaining. The principle which prevents a transfer of a note of a third person constituting payment of a precedent debt, unless upon a contract which allows it such an effect, forbids that a retired partner should be bound by such an agreement, or for the partnership debt which was paid according to it. If a transfer of such a note were a payment of a precedent debt without a new agreement, then the retired partner would be as liable for the failure of the note transferred to produce what was expected, as the partner who passed it could be. Bank notes when paid, constitute a payment of a precedent debt without a new agreement. The act of paying them is contemplated and authorized by the contract which created the debt. There is a palpable distinction between a payment in them, and in a note or bond. A payment with the former is made in what is considered as money, but a payment with the latter cannot be made according to the original undertaking, but introduces new liabilities and new parties.

In support of this distinction, he .cited 1 Burr. 459. 9 Johns. Rep. 120. 12 Johns. Rep. 220, 395. 10 Wheaton 347.

Where one partner pays a debt due from his late firm, in money or bank notes, which are regarded as money, and are afterwards ascertained to be counterfeit, the original liability of the partners is suspended after such payment, until the spurious character of the money is discovered. It then revives, but is not the cause of the revival of the liability contained in the contract which bound all the parties? From that contract, either parties derived power to pay the debt in money, or in what is considered as money ; and when one attempts to pay in money or bank notes, he does an act authorized by the contract, by which all the partners are bound. It is in effect, the act of all, and is not done in virtue of a new agreement, to which the debtor only, doing the act, and the creditor, are parties; and if the money or bank notes paid by one, are counterfeit, the original debt has never been discharged, because no act has been done that was not contemplated by the contract of the firm ; no new agreement with one of the partners has been accepted and relied on for the payment of the debt. In what is to be found the cause of the revival against the plaintiffs of the partnership demand, the evidence of which was once surrendered to Pope? it is in the spuriousness of one of the signatures to the note passed by Pope, on an agreement that it should be a payment of the partnership debt. Was it contemplated, when the partnership note of which Hickman was one of the makers, was executed, that Pope should, after a dissolution of the partnership, pay the debt by a transfer of a note on a third person, in which Hickman never had any interest? Surely not. But the debt was so paid according to an agreement between Pope and the defendants, to which Hickman was no party. One of the signatures to the note transferred in payment is said to be a forgery ; and the cause relied upon to revive the liability of Hickman is to be found, not in a contract to which he was a party, but in one made by Pope alone with the defendants. A partner who has retired is exposed, while payments of partnership debts are made in bank notes, to no more risk after than before dissolution. Both before and after, the partner who may pay, had a right according to the contract by which the

debt arose, to pay in bank notes; and all the partners are always liable for the acts of one, which he, by their partnership undertaking. had a right to do. The partner who may pay, might, if he had paid before dissolution, have passed forged bank notes or those of a bank which he knew to be insolvent; this risk is as great at one time as another, and belongs to the contract by which the partners bound themselves. But the liability now attempted to be enforced against Hickman, did not grow out of the contract of the partnership, but out of one of Pope alone, by which he paid to the defendants the debt of the late firm of Pope and Hickman. If Pope had endorsed the note which the defendants received from him in payment of the debt of the firm, Hickman would not be liable on the endorsement, as Pope alone was the endorser; and the endorsed note having been expressly received in payment of the partnership debt, Pope would not be responsible on the partnership contract, but could be liable only by the use of the diligence necessary to change his conditional undertaking as endorser into an absolute one. As the endorsement in the case put, would exempt Pope from responsibility on the partnership contract, Hickman too, would be discharged. He could no more be held liable on it, than one obligor can be on his bond, after his co-obligor has been released by the obligee. The liability of Hickman cannot be retained on the partnership note, after that of Pope has been relinquished by the defendants. He cannot be considered responsible alone, on the partnership contract, for by it he bound himself jointly and severally with Pope; and Pope cannot be held liable with him, because the defendants have accepted from Pope a conditional liability only, in full discharge of his responsibility on the partnership contract. The debt now claimed of the plaintiffs, was paid by Pope with a note which he transferred by delivery; but the defence of Hickman afforded by that payment, is as good as if Pope had endorsed the note. It will be conceded that this action must be sustained, if at all, by shewing that one at least of the liabilities appearing on the note paid by Pope, was not genuine; and proof of such a defect cannot maintain the suit, unless accompanied by evidence of the employment by the defendants, while they controlled the note, of proper diligence in their efforts to collect it. The cause of action against Pope is not founded alone on

the partnership contract, but upon the defect in the note which he transferred, and the employment by the defendants of the proper degree of diligence in attempting the collection of the note, and informing him of the obstacles which prevented it. The cause of action, if any, against Hickman, must be on the partnership contract alone, as he was no party to the agreement upon which Pope transferred to the defendants the note of Turner and others, and out of which, questions arise in relation to Pope, with which Hickman has no connexion.

The cause of action against Pope is not formed alone of the partnership contract, by which only Hickman was bound; and Hickman is not responsible now on the contract of the partnership, because unconnected with other grounds, it affords no cause of action against Pope. If Pope had, when he transferred the note in payment to the defendants, made, either in his own name, or in that of the former firm, a written warranty of the genuineness of all the signatures to it, Hickman would in neither case be liable for the breach of the warranty; not in the first, because it was the warranty of Pope only; nor in the last, for the want of authority in Pope to bind him; and can the implied warranty of the genuineness of the signatures be more extensive than an express one would be? Pope was not asked for the endorsement on the note of the former firm, of which he had been a member, but for his own; and it was his own that he refused to make. This fact shews that the transfer of the note was made in the capacity in which only the right existed to make it, the individual capacity of Pope; and as he exempted himself by his contract with the defendants, from responsibility for the insolvency of the persons bound by the note, the cause of action, if any the defendants have, must depend upon the breach of Pope's implied warranty of the genuineness of the signatures; and if the warranty of that had been express, the breach of it could not revive the partnership debt against Hickman. If Pope had paid the debt of the partnership in his own slaves or horses, which he warranted to be sound, would it be endured, that for the breach of the warranty, the debt should be revived against Hickman? or that for a defect in the title to the property thus paid by Pope, Hickman should be held liable at any period at which he could not protect himself by the statute of limitations? There is no pre-

text for charging Pope with any knowledge of the forgery, if it be so, of Turner's name, or any unfairness in the transaction which resulted in the payment of the partnership debt by the transfer of the note of Turner and others. But had Pope committed a fraud, by which he induced the defendants to enter into the new agreement with him for the satisfaction of the debt of the partnership, Hickman's claim to his release afforded by such an agreement, would not be impaired. If a creditor of a firm will, after its dissolution, accept from one partner without the consent of the other, a new and individual undertaking, in payment of a partnership debt, and cancel and surrender the evidence of the debt of the firm, he ought to bear all the consequences of the fraud, of which the person with whom he contracts may be guilty, and be denied the power of transferring the injury resulting from such an undertaking, to another who neither authorized or had any connexion with it. After a dissolution of a partnership, the persons who composed it have no more authority to bind each other than they would have, had they never sustained the relation of partners. If one obligor gives his note to the obligee, upon an agreement that it should be a payment of the joint bond of himself and another, the joint obligation is forever discharged. [a] If by the terms of the contract on which the obligor made the payment, he was to add to his note the security of a third person, which he forged, the other obligor would still be released from the joint bond. Upon a payment in this mode, the obligor who makes it has a right of action against the other obligor for his proportion of the joint debt which has been thus paid; and if the joint obligation could afterwards by any cause, be revived against him, who was no party to the agreement under which it had been paid, he might be compelled to pay his proportion of the debt to the obligor, who had apparently paid the whole before the fraud was discovered; and afterwards, the whole debt to the obligee. If the innocent obligor would be released from the bond in the case put, Hickman has been from the demand of the defendants. If Hickman be not liable, Pope is not in this action. [b] The record of the suit of the defendants against Turner, ought not to have been admitted as evidence; because there was no privity between Turner and Hickman, or between Pope and Hickman, and any of the parties to the note on

[a] 2 John. R. 518, Witherby vs. Mann & Mann.

[b] 1 Chit. Pl. 26, 27.

which Turner was sued : and even if Pope had notice of
the pendency of that suit, Hickman had not, and was not
bound by the notice to Pope. [a]

KELLY, HUTCHINSON, CLAY and M'CLUNG, for the
defendants in error, argued on the following points :

1st  That the payment by Pope in the note of Turner
and others; did not release Hickman ; it was no new or
original contract.  In support of this position, they cited
the case of Smith and Marshall against Rogers and Be-
ment, [b] where the defendants had been partners and dis-
solved.  Bement wrote to the plaintiffs and assumed the
debt, to which they answered they were satisfied.  Be-
ment afterwards gave his note, and proved insolvent.
The plaintiffs recovered against both. 'In Schermerhorn,
et al. against Loines, et al. [c] which was an action of as-
sumpsit for goods sold ; the defendants were joint owners
of a ship ; the note of one was taken and a receipt in
full was given.  The maker, Townsend, proved insolvent;
neither the note nor the receipt were held to be an extin-
guishment, and the plaintiffs recovered.  In Putnam
against Lewis, [d] the defendant had given his own note.
It was held that the giving the note was no extinguish-
ment.  If the debt of Pope and Hickman was not extin-
guished absolutely by the transaction between Pope and
Lucas, can it be said that Hickman has been discharged ? [e]
Pope was authorized by the terms of the advertisement
of dissolution to settle the business of the late firm, in
the most comprehensive terms.

2d.  As to the necessity to return the substituted note,
the case of Clarke against Young [f] shews, that as re-
ceiving the note is no extinguishment, there was no ne-
cessity to return it before this suit was commenced.  In-
solvency will excuse the want of diligence in suing, &c.
In the case of Holmes and Drake against D'Camp, [g]
where the defendant had given a note, and the suit was
not founded on it, it was held no extinguishment; and that
the note might be, and it was, produced and cancelled on
the trial.  The case of Johnson against Weed and ano-
ther, [h] was an assumpsit for goods sold, &c.  Weed made
payment in the note of one Townsend, a third person,
who proved insolvent before the note fell due.  The plain-
tiff had said he was perfectly satisfied with the note, and
gave a receipt in full.  The plaintiff recovered, though
there was no fraud, and nothing was said about the re-

a 2 Hen. & Munf.
139.  20 John. R.
382.  5 Jacob's
Law Dic. 286,
title "Privity."

b 17 John. R. 340.

c 7 John. R. 311.
See note at end
of this case.

d 8 John. R. 389.

e Sugden on Ven-
dors 534. Notice;
&c.

f 1 Cranch 181.

g 1 John. R. 34;

h 9 John. R. 310;

turn of the note. Puckford against Maxwell [a] was a case where a draft was given in payment of a debt, the drawer having no funds in the hands of the drawee. It was held no payment, but a nullity, and that the plaintiff might act as if no such bill had been given. Would it have benefitted the drawer to have had the draft returned? In the case of Swartwout against Paine, [b] the payment was made in a note which was void for usury; it was held a nullity. Here certainly it would not have been necessary to return the note. The case of Jones against Ryde was on a navy bill which was paid in part, and left with the navy commissioners; yet a recovery was allowed. [c]

3d The record in the former suit against Lucas and Turner was admissible evidence. In Blasdale against Babcock, [d] where the plaintiff had bought a horse of the defendant and was sued in trover by the rightful owner, and a recovery was had against him; he had given the defendant notice, but not of the term of the trial. The record was read properly. In Kip against Brigham and others, [e] a sheriff had been sued for an escape and a recovery had. He gave notice of the pendency of the suit to the debtor's securities for the jail liberties; the record was held to be conclusive evidence for the plaintiff. This principle is recognized by many other authorities, [f] and the admissibility of this evidence was, in effect, decided in the opinion delivered in this very cause in July, 1827. [g]

4th. The fraud of Pope would vitiate the transaction; although diligence had not been used, we would be authorized to recover on that ground. In the case of Wilson against Force, [h] where payment was in a note, the maker of which was represented to be insolvent when the defendant knew he was not, it was held that the contract or payment might be disregarded, that it was a nullity. Arnold against Crane [i] was a case where three notes had been given, which were taken up under the fraudulent pretence of securing the payment by mortgage. The defendant kept the deed and sold the land to another. In the case of Owenson against Morse, [k] where payment for plate was made in a bill which turned out to be of no value, a recovery was had. [l]

5th. Turner was a competent witness; the objection went only to his credibility. If a witness has only a re-

JANUARY 1828.

Pope & Hickman
v.
Nance & Co.

a 6 Term R. 52.

b 19 John. R. 294.

c 1 Sergt. & Low. 167. See also, 2 Sergt. and Low. 118. Chitty on Bills 185. Note ante page 227.

d 1 John. R. 518.

e 3 John. R. 158.

f 7 John. R. 168. 7 Cranch 308, 322. 4 Hen. and Munf. 202–5. Phil. evid. 227, 234. 13 John. R. 224. 3 T. R. 374. 4 Wheat. 213. 4 Dallas 120.
g Ante page 220.

h 6 John. R. 110.

i 8 John. R. 79.

k 7 T. R. 60.

l See 1 Comyn on Contracts 37, 38.

mote or contingent interest, it goes only to his credit, not to his competency; [a] so it is, if he has no legal or fixed interest. [b] Here Turner's interest, if any, was neither direct nor immediate.

JANUARY 1828.

Pope & Hickman
v.
Nance & Co.

[a] 5 John. R. 256.
[b] 10 John. R. 21.
9 John. R. 219.
[c] 15 John. R. 240.
16 John. R. 201.
6 John. R. 102.
note.

6th. There is an implied warranty in the transfer of every negotiable note, that it is not forged, though it was taken at the holder's risk as to solvency. [c]

7th. Our action is founded on the sale of the negroes. The special count was unnecessary. The affair of the substituted note is matter of defence. The facts of forgery and fraud as alleged, must be taken as true, as the evidence certainly tended to prove them; and even if the verdict is contrary to the weight of testimony, it can only be controlled by giving a new trial, unless founded on an improper charge or illegal testimony. It cannot be assigned for error that the verdict is contrary to evidence; the charge was correct and the evidence legal. A man cannot avail himself of his own fraud, either to create an obligation on another, or discharge one on himself. Payment by one joint debtor enures to the benefit of all; but if the one attempting to pay, commits a fraud by which the attempt is void, the co-debtors cannot fix the attributes of a subsisting contract to the void transaction, but must abide the condition they were in before the attempt was made.

By JUDGE GAYLE, after stating the facts.

THE first point insisted on is, that the failure of Lucas to offer to return the note received in payment to Pope, within a reasonable time after Turner alleged it was a forgery as to him, discharged the plaintiffs in error from their liability; and that he ought to have offered to return it before he sued Turner. On this point, the second charge of the Court below was given, as stated in the bill of exceptions.

The plaintiffs' counsel requested the Court, in addition to that charge, to instruct the jury, that if the note was received in payment and was not offered to be returned in a reasonable time after it was heard that Turner said the signature as to him, was a forgery, the plaintiffs could not recover; and also, that they could not recover if no offer was made to return it before suit was commenced against Turner. It is obvious that this last proposition was too broad, and ought not to have been acceded to by

47

the Court.  It cannot be perceived how the bringing of a suit against Turner could affect the interest of Pope and Hickman.  If the offer to return in a reasonable time had been made, it was immaterial to them what measures had been commenced against the makers ; for they could not have interfered with, or had any influence upon the steps they might think proper to adopt for their own security.  The suit might have been commenced, and the note have been returned on the same day.

The principle assumed then in the other part of the request of the plaintiffs' counsel to charge the jury, is, that the return or offer to return in a reasonable time, must be made without the exception laid down by the Court, to wit : that if the plaintiffs in error have received no injury from a failure to return, they cannot make such failure the ground of objection.  In the case of Clark against Young & Co. [a] it was held that suit might be brought against the person of whom the note of a third person was received before the return of the note, and the principle is recognized that there was no necessity to return it on account of the insolvency of the maker.  The case was this : Clark purchased of Young & Co. a quantity of salt, and at the time of the delivery, endorsed to them a note on one Mark Edgar.  Young & Co. instituted a suit against Clark as the endorser, and a verdict was found for the defendant ; whereupon they sued on the original contract and recovered.  The note was not returned before the bringing of the second suit.  Edgar was reported insolvent, and although Clark was entitled to the benefit of the note, the Court said there was no necessity for an offer to return it even before the commencement of the last suit.  In this case it is apparent that the reason why a return was not necessary was, because on account of the insolvency of the maker, there could be no injury to the endorser.  The case of Johnson against Weed, [b] was where a note was given in payment of goods.  It was doubtful whether it was received as a payment.  Before it became due the maker proved insolvent, and the plaintiff recovered on the sale of the goods.  No offer to return the note appears to have been made.  In Puckford against Maxwell, [c] a draft was given in payment of a precedent debt, and being dishonored, was treated as a nullity.  If the drawer had had funds in the hands of the drawee, notice would have been necessary ;

JANUARY 1828.

Pope & Hickman
v.
Nance & Co.

a 1 Cranch 181.

b 9 John. R. 310.

c 6 T. R. 52.

but having none, he could receive no injury for want of it.

In these cases the principle is established that the re- turn of a note is unnecessary, whether it be received in payment or not, if the failure to return could be of no in- jury to the person by whom it was put off. There is no difference in the reason of the thing, between the note of a third person and a bill of exchange or draft. In the latter case, the notice of dishonor is necessary to enable the drawer to protect his own interest, but where his in- terest cannot be affected for want of notice, it is not ne- cessary. This principle was expressly laid down by this Court in the case between these parties, at the last July term. The Chief Justice then says in substance, that the offer to return was unnecessary, if it would visit no in- jury to the party. On this point, the plaintiffs' counsel has relied upon an expression of Mr Justice Story in the case of the United States' Bank against the Bank of Georgia. He there states that "any neglect will absolve the payor from responsibility." It is apparent that the exception stated by the Court was not in his contem- plation; if it had been, there is no doubt he would have added it.

But there is another view of this subject which must be conclusive. Admitting that the principle contended for by the plaintiffs' counsel is correct, it could not con- trol this question. The evidence shews that Pope, from the earliest suggestion of doubts as to Turner's signature, resolved not to pay the debt in any event. He shewed some anxiety to have the suit against the makers well conducted, but disclaimed all liability or intention of be- ing bound by the original contract. This was known to the agent of Lucas, for he was present at the time. Of what avail then, would have been an offer to return? The law does not require an act to be done which would be useless in itself, which doubtless would have been the case here.

In addition to this it may be remarked that, under the circumstances, Lucas may not have conceived himself authorized to return the note; for the better opinion seemed to be, when suit was commenced, that the signa- ture of Turner was genuine. It was the impression of those who examined it, that it was no forgery, and of Pope among the rest. He did not admit the fact of for-

JANUARY 1828.

Pope & Hickman
v.
Nance & Co.

gery, but on the contrary denied it ; and until it was es-
tablished in some legal way, Lucas could have no ground
for a recovery on the original consideration. Pope, there-
fore, having notice of the suit and of the matter to be
tried, and not consenting to, but denying the forgery,
cannot complain of a failure to return the note. It was
the best mode of ascertaining the forgery, and was of
itself a good excuse for Lucas' not returning the note.
The suit was in fact as much for the benefit of Pope as of
Lucas.

The second point raised in the argument by the plain-
tiffs' counsel is, that the act of Lucas in receiving the note
in payment, after he knew of the dissolution of the part-
nership, extinguished the partnership debt of Pope and
Hickman, and it could never afterwards be revived with-
out the express consent of Hickman.

There can be no doubt that if the note had been what
it purported to be, Hickman would have been entirely
discharged. The true question here is, whether it was
such a contract as threw the burthen of its liabilities ex-
clusively on Pope, so as to protect Hickman from any
recourse on him ? The cases which have been referred
to by the plaintiffs' counsel are, most of them, belonging
to that class which releases the partner from his partner-
ship debts when the individual note of another partner
has been received in payment. This is acknowledged to
be correct as to partners generally, and will apply with
greater force to a retired partner. This rule is clearly
and positively laid down by Lord Kenyon, in the case of
Evans against Drummond. He says emphatically that
it is not " to be endured, that when partners have given
their acceptance, and when perhaps one of the two part-
ners has made provision for the bill, that the holder shall
take the sole bill of the other partner, and yet hold both
liable." But the question here is, whether by the con-
tract Lucas relinquished his claim against the partner-
ship ?

In the case of Jones against Ryde, it was held " that a
person who discounts a forged navy bill for another, who
passed it to him without knowledge of the forgery, may
recover back the money, as had and received to his use,
upon failure of the consideration." Heath Justice said,
" if a person gives a forged bank note, there is nothing
for the money ; it is no payment. In the same case it was

said, "a man takes this security, looking to the persons

who are to pay it: he takes it on the presumption that it is a navy bill. It was not what it purported to be."

The case of Markle against Hatfield, *a* is more in point, and in principle, more nearly assimilated to this case than any which has been read from the bar. Chief Justice Kent reviewed with the clearness and discrimination, for which he has been so justly distinguished, the doctrine as it is now settled, in the cases of payment in negotiable paper. He shews that in transactions of this kind, there is no difference between a bank note and the note of a third person. The forgery of either is the same thing to the party receiving it. He is equally unsuspecting and ignorant as to its genuineness, and having received a private note instead of a bank note, and as a substitute for it, there is no reason that he should be held to risk its forgery. In the language of the Judge just alluded to, the plaintiffs below parted with their just demands on the defendants, without receiving what was intended. The note was not what it purported to be, and was in fact no payment. The contract between the parties was, that the note should be paid by the note of Hutchings & Co. and Simon Turner, endorsed by Harris. Was any such payment made? How can Lucas be bound by a contract which was not executed on the other side? and how can they claim the benefit of it in the very face of a failure on their part, of a compliance? The situation of Hickman being a retired partner, can make no difference. He has never been discharged from his liability as one of the firm. The analogy traced by the plaintiffs' counsel between this case and those of deeds with warranty of title to property, is not perceived. The deed is genuine; the obligation it imposes on the parties to it are not illusory, and the purchaser relies on those obligations. The deed is what it purports to be, and it is held as an indemnity against the want of title. If the deed be forged, then the resemblance appears, or if Pope had given his own note in payment, the cases put by counsel would be more analogous.

The third position assumed by plaintiffs' counsel is, that the testimony of Turner on the trial, ought not to have been admitted, because he was directly interested in establishing the forgery of the note. This point and the next, to wit, that the record of the trial between Lucas

JANUARY 1828.

Pope & Hickman
v.
Nance & Co.

and Turner was inadmissible, will be considered together.

We think the principle involved in this part of the case too well settled to be now questioned. Pope was duly notified of the pendency of the suit; was applied to for instructions as to the witnesses to be subpœnaed, and was interested in the issue to be tried. It was upon the successful termination of that suit that his liability to Lucas was to be at an end. The case of Kip against Brigham et al. is similar to this. The sheriff was sued for an escape, and a recovery had; he gave notice to the securities of the debtor for the jail bounds. In a suit against said securities, the record was held admissible and conclusive. Turner, therefore, having no interest in the suit, was a competent witness, and the temptation he may have had to swear falsely could only go to his credit.

The admissibility of evidence to prove the forgery of the name of Harris, the endorser, was objected to in the argument, though not noticed in the brief. It was said that by our statute he cannot be discharged from his endorsement, unless he denies it on oath. The statute in this respect has placed promissory notes, &c. on the footing of sealed instruments, and forgeries of every kind are permitted to be proved in this way.

In the examination of this case, the Court have not thought it necessary to advert to all the arguments made by the counsel by way of illustration; but have confined themselves exclusively to the points which they believe should govern the case. They have been relieved from much labor of investigation by the very able argument of the counsel of both sides.

### By JUDGE CRENSHAW.

In this case I have not been able to come to any satisfactory and conclusive opinion, and therefore do not undertake to dissent from the judgement of the Court. I am, however, inclined to think that unless fraud has been brought home to Pope, he and Hickman cannot be charged, if the note was not returned as soon as it was discovered that it was of no value. But in expressing no dissenting opinion, it is not to be understood that I concur in the judgement of the Court. Judgement affirmed.

JUDGE WHITE presided below, and did not sit.